IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert Peoples, ) | |
| ) | Civil Action No. 8:07-2702-CMC-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| SCDC, Warden Stan Burtt, ) | |
| Lieber Correctional Institution, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a prisoner proceeding pro se, brought this action alleging constitutional violations pursuant to 42 U.S.C. § 1983. The matter is before the Court on the plaintiff's motions for partial summary judgment (Dkt. # 34) and to Compel Discovery (Dkt. # 29 and 38); and the defendants' motion for summary judgment (Dkt. # 32.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on August 1, 2007, seeking damages for alleged civil rights violations.[1] On December 19, 2007, the defendants filed a motion for

---

[1] This is the date the petition was stamped as having been received by the Liber Correctional Institution mailroom (Compl. Ex. 2). <u>Houston v. Lack,</u> 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

summary judgment. On December 20, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 4, 2008, the plaintiff filed a response opposing the defendants' motion. Then, on February 8, 2008, the plaintiff filed a supplemental response opposing the defendants' summary judgment motion. The plaintiff also filed his own motion for partial summary judgment on December 20, 2007, and the defendants filed a response opposing that motion on February 7, 2008.

## **FACTS PRESENTED**

The plaintiff is a state inmate within the South Carolina Department of Corrections ("SCDC") currently housed at the Lieber Correctional Institution ("LCI"). The plaintiff alleges that on March 28, 2005, the SCDC revised its policy regarding what materials SMU inmates may possess. (Compl. 3.) Pursuant to this policy, in SMU, an inmate is entitled to possess his primary religious book, such as a Bible or Qur'an, and one book or magazine which must be obtained through Library Services. The inmate is required to turn in a book or magazine in order to receive another book or magazine. (*Id.*) Further, he states that if the inmate refuses to turn in a book or magazine, the refusal is supposed to be documented and the material is to be processed pursuant to the policy dealing with the disposition of unauthorized property. (*Id.*)

The plaintiff alleges that on December 19, 2005, he was transferred into LCI and, at that time, he was a subscriber to "no less than three different types of reading material

2

from publishing companies." (Compl at 4.)   He alleges that each month the reading material was sent back to the sender and he lost a substantial amount of money. (*Id.*) He alleges the defendant Warden Stan Burtt is deliberately and intentionally denying the SMU inmates reading material in opposition to SCDC Policy OP-22.12.  (*Id.*)

He alleges the denial of reading material from outside sources violates his First and Fourteenth Amendment rights. He also alleges "[t]he denial of legal books, from publishing companies, to inmates on SMU thats relevant to pending cases violated plaintiff's rights and constitutional freedom of speech and expression, due process and equal protection violations . . . " (*Id.*)  The plaintiff is seeking a preliminary and permanent injunction in the form of an order requiring the defendants to allow SMU inmates to receive reading material from publishing companies and the library and compensatory and punitive damages.  (Compl.  at 6.)[2]

## DISCUSSION

**Defendant SCDC**

The defendant the SCDC contends that it is not a "person" amenable to suit under 42 U.S.C. § 1983.  The undersigned agrees.  It is well-settled that an agency of the state, is not a "person" within the meaning of § 1983, and thus is not a proper defendant. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, the defendant the SCDC should be dismissed.

---

[2]The undersigned notes that defendant Stan Burtt has retired and is no longer the warden at Lieber.

**Exhaustion**

The defendants contend the plaintiff did not exhaust his administrative remedies for all of his claims prior to filing this action. The undersigned agrees that not all of the plaintiff's claims have been exhausted.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2386 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the

4

programs it administers before it is hauled into federal court." *Woodford,* 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to

5

suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 677 (4th Cir. 2005);*Cabbagestalk v. Ozmint*, 2007 WL 2822927 (D.S.C. 2007). *See also Neal v. Goord*, 267 F.3d 116, 123 (2nd Cir.2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *Miller v. Tanner,* 196 F.3d 1190, 1193 (11th Cir.1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

The plaintiff has alleged that was denied his subscription magazines while in SMU. Additionally, he alleges was denied general library services during parts of 2006 and from January 1 through September 17, 2007. (Pl.'s Mot. for Partial Summ. J. at 2.) The plaintiff submitted a request to staff grievance on June 21, 2006, in regard to his

denial of magazines or reading material from publishing companies and the denial of access to the library. (Compl. Attach.) Then, on July 3, 2006, he filed a Step One grievance only in regard to the denial of reading material from publishing companies. (Compl. Attach. - Greivance # LCI-0959-06.) On July 12, 2006, the grievance was forwarded to headquarters for a response. (*Id.*) On September 26, 2006, the plaintiff filed a Step Two grievance which was forwarded to the Central Office the next day. (*Id.*) On November 8, 2006, Robert Ward responded. (*Id.*)

In a grievance filed on May 2, 2007, the plaintiff alleges he raised the denial of access to the library. (Pl.'s Mem. Opp. Defs.' Summ. J. Mot. ¶ 4.) The plaintiff contends he exhausted his administrative remedies because the defendants failed to timely respond and did not respond until October 3, 2007. (*Id.*) It is undisputed that the Warden did not respond to the Step One grievance within the forty days allowed.

> A prisoner must, however, refrain from filing suit in federal court until all time periods for both steps to be completed runs, even if the SCDC fails to respond to an inmate's grievance at either the Step 1 or Step 2 levels. Once the full 105 day period has run without the issuance of a response or responses, it is generally held that the inmate has substantially complied with the § 1997(e) exhaustion requirement by exhausting "such administrative remedies as are available." 42 U.S.C. § 1997e(a).

*Cabbagestalk v. Dubose*, 2007 WL 201028 (D.S.C. 2007)(unpublished). The plaintiff filed this action on August 1, 2007, without waiting until the entire 105-day-period had run. Accordingly, he did not exhaust his administrative remedies regarding his claims

that he was denied access to the library in parts of 2006 and from January 1 - September 17, 2007.[3]

As to the plaintiff's claims regarding the denial of a legal book, on June 30, 2007, the plaintiff submitted a Step One grievance regarding this claim and he received a response on August 3, 2007.  (*Id.* Ex. 6.)  Thus, this claim was clearly not exhausted *prior* to the plaintiff filing this action on August 1, 2007.  Accordingly, the plaintiff's claims regarding denial of access to the library during 2006 and 2007 and denial of a legal book were not exhausted prior to the plaintiff's filing of this action and should be dismissed.

**SCDC Policy**

As to the plaintiff's claim regarding the SCDC policy of limiting reading material, the defendants contend the policy does not violate the plaintiff's constitutional rights. The undersigned agrees.

The plaintiff contends that the SCDC policy limiting access to written materials, books and magazines for inmates in SMU violates the First Amendment. SCDC Policy No. OP-22.12 ¶ 31 governs the property that inmates housed in a SMU may possess. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Robert Ward Aff. ¶ 3 & Ex. B.)   The current version of SCDC Policy No. OP-22.12 superseded the prior version on September 1, 2007. (Defs.' Mem. Supp. Summ. J. Mot. Ward Aff. ¶¶ 2-3.)  Specifically, the plaintiff is

---

[3]Additionally, the plaintiff now alleges he has been denied access to the library in December 2007 and in 2008.  However, the plaintiff also states he is not amending his complaint to raise new claims and clearly these claims have not been exhausted.  Therefore, the undersigned will not address these allegations.

8

challenging § 31 of the old version which governed the property that inmates housed in a Special Management Unit ("SMU") may possess.[4]  Pursuant to this policy, an SMU inmate may possess his primary religious book, such as a Bible or Qur'an, one book or magazine at a time which must be obtained through Library Services, and one box of legal materials. (Id.)

Inmates clearly retain their First Amendment right of free speech in prison. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, in *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id.* at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id*.

In *Turner*, the Court identified four factors to consider: (1) Whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) Whether there are alternative avenues that remain open to the inmates to exercise the right; (3) The impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) Whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90.

---

[4]In the current policy, these restrictions are set forth in § 26.

9

First, the court must determine whether the regulation is rationally related to a legitimate and neutral governmental objective. In his affidavit, Robert E. Ward, the SCDC Director of the Division of Operations, outlines several legitimate governmental objectives that are served by this policy. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Ward Aff.) He states that the limitation on the amount of reading material promotes order and helps maintain discipline. (*Id*. ¶ 5.) Further, Ward states that it creates an incentive or motivation for inmates placed in SMU to change their behavior so that they will either be released from SMU or avoid placement in SMU. (Id.) An inmate in the general population is not subject to the limitations on the receipt of books and magazines through the mail. (*Id.*)

In his affidavit, Ward also discusses other penological objectives served by the policy at issue. For instance, the limitation on reading materials reduces a potential fire hazard in the unit. (Defs.' Mem. Supp. Summ. J. Mot. Attach 2 - Ward Aff. ¶ 8.) Further, the limitation reduces clutter and therefore inmates have fewer places to hide contraband, including drugs and weapons. *(Id.* ¶ 7.) In addition, Ward states that the policy acts as a deterrent for improper uses of the reading materials. Ward states inmates have used the paper from books, magazines, and newspapers to cover cell windows to conceal their activity within the cell, jam the locks to prevent entry into the cell, and stop up toilets. (Id. ¶ 9.) Ward also states that limiting an inmate's access to reading materials provides an incentive "not to misuse those materials for purposes such as setting fires or covering cell windows or jamming locks or stopping up the toilets." (*Id*.

10

¶ 10.) The policy limiting reading materials to SMU inmates clearly serves legitimate security and safety objectives.

In *Beard v. Banks*, 126 S.Ct. 2572 (2006), the United States Supreme Court recently upheld a policy similar to the SCDC's policy for SMU inmates. In *Beard*, the Court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. The Court determined the reason for the policy, which was to provide an incentive to promote better inmate behavior, satisfied the *Turner* standard. Likewise, here, the SCDC policy is rationally related to legitimate and neutral governmental objectives.[5]

Turning to the second factor in *Turner* and whether there are alternative avenues remaining open for the plaintiff to exercise his rights, the court notes that the SCDC policy does not deprive the plaintiff of all books, magazines, and reading material. It merely limits the amount he may possess. The plaintiff can possess his primary religious book and legal materials. Additionally, he can possess one book or magazine from Library Services. The plaintiff is not subject to a total ban on all reading materials.

The third factor in *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." 482 U.S. at 90. As the Supreme Court explained in *Beard,* the third

---

[5] The court notes that the prohibition is content-neutral as it applies to all books and publications regardless of content.

factor is satisfied because correctional officials would otherwise not have this method of rewarding good behavior and for punishing inappropriate behavior.

Finally, in assessing whether the presence of ready alternatives undermines the reasonableness of the policy, *Turner* does not impose a least restrictive alternative test. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. *Overton*, 539 U.S. at 136. The Supreme Court described this as a "high standard" to meet. *Id.* As the Supreme Court has recognized, restrictions on privileges are an effective "management technique" in controlling "high-security prisoners who have few other privileges to lose." *Id.* at 134. The plaintiff has not offered any reasonable alternative. Based on the foregoing, the court concludes that the SCDC policy is reasonably related to a legitimate penological goal.

As the defendants note, the same regulation at issue here has been examined by several district judges in this district and found to be constitutional. *See, e.g.,* Koon v. Ozmint, 2007 WL 1486067 (D.S.C. 2007)*; Wiles v. Ozmint*, 2006 WL 2260136 (D.S.C. 2006)*; Corey v. Reich*, 2004 W L 3090234 (D.S.C. 2004); *Strong v. Ozmint,* C.A. No. 2:03-2256 (D.S.C. 2004); *Incumaa v. Ozmint,* C.A.No. 0:03-2776 (D.S.C. 2004). Based on the foregoing, the defendants should be granted summary judgment on this claim.[6]

---

[6]Additionally, the plaintiff contends that the defendants failed to notify him of or enforce the policy change and allowed him to continue receiving magazines in 2005 when he was housed at the Evans and Lee Correctional Institutions. (Pl.'s Mem. Opp. Defs. Summ. J. Mot. at 2.)  The defendant Warden of LCI cannot be held accountable for actions taken at other institutions. Therefore, the only named defendant who could be liable on this claim is the SCDC and the undersigned has recommended the dismissal of the SCDC. Thus, this claim should be dismissed.

12

**Qualified Immunity**

Having found that the plaintiff has not raised a viable § 1983 claim, the court need not determine whether any rights the plaintiff has asserted were "clearly established" for purposes of qualified immunity. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

**Plaintiff's Motions to Compel**

The plaintiff has also filed two motions to compel. (Dkt. # 29 & 38.) In the plaintiff's first motion to compel, the plaintiff sought an order requiring the defendants to fully respond to question 7 of plaintiff's first set of interrogatories. (Dkt. # 29.) Specifically, the plaintiff sought the SMU log book for September and October 2007. He sought this information to prove that the defendants were violating the SCDC policy and began to allow SMU inmates access to the library after the plaintiff had filed this action. The defendants responded as follows: "Objection. The Plaintiff has not made any claims related to the information requested." (Dkt. 27 Defs.' Resp. Opp. Mot. to Compel -Attach 2.)

13

The undersigned does not see how this information would prove the plaintiff's claims. The defendants do not dispute that at some points during 2006 and 2007, SMU inmates were denied all access to the library. More importantly, as discussed above, the undersigned has recommended that any claim relating to these allegations be dismissed because the plaintiff did not exhaust his administrative remedies. As this information does not relate to exhaustion, it is unnecessary. *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995) (holding that district court may rule on summary judgment motion despite pending motion to compel discovery where plaintiff did not identify facts he hoped to obtain through discovery that would prevent entry of summary judgment against him); *Waible v. McDonald's Corp.*, 935 F.2d 924, 926 (8th Cir.1991) (upholding the grant of summary judgment despite outstanding discovery requests because the Court could not find that the "unanswered interrogatories contained information [the Plaintiff] needed in order to adequately respond to the motion for summary judgment.").

In his second motion to compel, the plaintiff sought responses to his second sets of interrogatories, requests for production, and requests for admissions. (Dkt. # 38). The defendants contend the motion to compel is untimely. The undersigned agrees.

On December 16, 2007, the plaintiff served a second set of interrogatories, requests for production, and requests for admissions on the defendants. On January 15, 2008, the defendants served objections to those sets of discovery. On August 20, 2007, the Court filed an order requiring the defendants to file any dispositive motions within 45 days after the filing of the answer. (Dkt. #6). The Court extended the deadline for filing

dispositive motions to December 19, 2007. (Dkt. # 25). All discovery should have been *completed* before the dispositive motion deadline set by the Court.

The defendants timely filed their motion for summary judgment on December 19, 2007. The plaintiff also filed a motion for partial summary judgment on December 20, 2007. The plaintiff never sought an extension of the dispositive motion deadline nor did he move for an enlargement of the discovery period.

Furthermore, the undersigned must deny the motions because the plaintiff did not attach a copy of the discovery requests he submitted to defendants as required by Local Rule 37.01, D.S.C. Without a copy of the discovery requests, the undersigned cannot determine if the discovery requests were appropriate. Accordingly, the plaintiff's second motions to compel should also be denied.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Plaintiff's Motions for Partial Summary Judgment (Dkt. # 34) and to Compel Discovery (Dkt. # 29 and 38) be DENIED; and the Defendants' Motion for Summary Judgment (Dkt. # 32) be GRANTED.

**IT IS SO RECOMMENDED.**

s/Bruce Howe Hendricks
United States Magistrate Judge

May 12, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).